**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | § | |
| **IN RE:** | § | **CASE NO: 24-12511** |
| | § | |
| **PORT LOUIS OWNERS** | § | **CHAPTER 11** |
| **ASSOCIATION, INC.,** | § | |
| | § | **SECTION A** |
| | § | |
| **DEBTOR,** | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

The Court held an evidentiary hearing (the "<u>Confirmation Hearing</u>") on April 14, 2026, and April 20, 2026, to consider the *Plan of Reorganization for Small Business Under Chapter 11*, [ECF Doc. 276], as amended, [ECF Doc. 352], (the "<u>Plan</u>"), filed by Port Louis Owners Association, Inc. ("<u>Port Louis HOA</u>"); and the *Expedited Motion in Aid of Confirmation for the Plan of Reorganization* (the "<u>Covenant Approval Motion</u>"), [ECF Doc. 316], filed by Port Louis HOA.[1] As a component part of the Plan, the Covenant Approval Motion seeks the Court's approval of the *Amended and Restated Act of Dedication of Servitudes, Privileges and Restrictions*, dated December 6, 2025, (the "<u>Amended Covenants</u>"), [ECF Doc. 292-1]. At the Confirmation Hearing, the Court heard testimony from Port Louis HOA's board member Thomas Cousins, as well as Rodney Durst, Port Louis HOA's property manager. The Court admitted twelve exhibits into evidence. [ECF Doc. 351 (Exhibits 1–6)]; [ECF Doc. 353 (Exhibits 1–6)].

      No party in interest filed a timely objection to the Plan or the Covenant Approval Motion. But Port Louis HOA, as the Plan proponent, bears the burden of establishing that each requirement for confirmation under the Bankruptcy Code has been satisfied by a preponderance of the evidence.

---

[1]     On April 14, 2026, the Court also conducted an evidentiary hearing to resolve the *Motion To Dismiss Bankruptcy Petition for Lack of Corporate Authority and Improper Filing* (the "<u>Motion To Dismiss</u>"), [ECF Doc. 278], filed by townhouse owner Justin Mayet. The Court entered an Order denying the Motion To Dismiss. [ECF Doc. 345].

*See In re Multiut Corp.*, 449 B.R. 323, 332–33 (Bankr. N.D. Ill. 2011); *In re Pearl Res. LLC*, 622 B.R. 236, 260 (Bankr. S.D. Tex. 2020). Furthermore, "[t]he Code imposes an independent duty upon the court to determine whether a plan satisfies each element of § 1129, regardless of the absence of valid objections to confirmation." *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001) (citations omitted).

The Court finds that Port Louis HOA has met its burden to show that all requirements of § 1129(a) are satisfied; the Court writes specifically to address the feasibility of the Plan under § 1129(a)(11) and to include its reasons for granting the Covenant Approval Motion. Pursuant to Federal Rules of Bankruptcy 9014 and 7052, the Court now makes the following findings of fact and conclusions of law:[2]

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(B). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FINDINGS OF FACT

Port Louis HOA is a non-profit homeowners association established by the Act of Dedication of Servitudes, Privileges and Restrictions dated December 5, 1984 (the "Original Covenants"). [ECF Doc. 351, Ex. 1]. The Original Covenants referenced plans for a 300-acre planned community featuring condominiums, marinas, and other recreational amenities and

---

[2] To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

commercial establishments, but those plans never materialized. *See id.*; Hr'g Rec'g 3:12–:14 & :41 (Apr. 20, 2026). Instead, Port Louis HOA exists as an association of 53 townhouses spread across 9 buildings. *See* Hr'g Rec'g 3:47.

Rodney Durst is a principal of Renaissance Realty Services, LLC, and the property manager of Port Louis HOA as of October 2025. *See* Hr'g Rec'g 3:07. Durst previously served as the property manager of Port Louis HOA approximately twelve years ago and is thus familiar with the properties and finances of Port Louis HOA. *See id.* Durst's role as property manager includes bookkeeping, vetting contracts, conducting inspections, and conducting elections. *See* Hr'g Rec'g 3:08–:09. Durst's company, Renaissance Realty Services, LLC, performs the same functions for approximately 33 other homeowner associations. *See* Hr'g Rec'g 3:30–:32. Thomas Cousins has owned a townhouse in the Port Louis complex for six years and has served as a board member for five years, first as Port Louis HOA's President and now as the Secretary. *See* Hr'g Rec'g 3:39–:40.

### Problems Leading to Port Louis HOA's Bankruptcy Filing

The Original Covenants required Port Louis HOA to purchase a master insurance policy providing casualty and liability insurance covering all units within the community. [ECF Doc. 351, Ex. 1, Art. IV]; Hr'g Rec'g 3:15. In the aftermath of Hurricane Ida, the costs of procuring master insurance policies increased dramatically, if such a policy can be obtained at all. *See* Hr'g Rec'g 3:17–:18. In light of the dues collection issues, discussed *infra*, Port Louis HOA cannot afford the policies required to insure properties in the complex. Moreover, Durst has been advised by the Louisiana Department of Insurance that an association of townhomes such as Port Louis HOA should not serve as the insured party on a master insurance policy. *See* Hr'g Rec'g 3:15. This type of association does not own the property that it insures under a master policy, meaning

that in the event of a payout, the association becomes responsible for adjusting individuals' private property.  *See* Hr'g Rec'g 3:15, 3:30.

Of the 53 units in the Port Louis HOA, 25 are delinquent in paying association dues as of October 29, 2025.  [ECF Doc. 351, Ex. 4]; Hr'g Rec'g 3:26–:27.  The average delinquency is more than $20,000.  [ECF Doc. 351, Ex. 4].  Monthly dues average approximately $380 to $400, meaning that many owners have been living in their townhouses *for years* without paying dues. *See* Hr'g Rec'g 3:58–4:00.  The burden to fund insurance and other costs of maintaining Port Louis HOA's common areas thus falls inequitably on those homeowners who pay their dues timely.  But the Original Covenants provide Port Louis with limited means to enforce association rules.  *See* Hr'g Rec'g 3:49–:50.  The inability to collect outstanding association dues has crippled Port Louis HOA's viability.

The Original Covenants also created the obligation for Port Louis HOA to maintain the "exteriors" of the buildings in the complex, but left the contours of that responsibility relatively unclear, thereby fomenting confusion and litigation over the line between interior and exterior maintenance.  [ECF Doc. 351, Ex. 1, § 9.01]; Hr'g Rec'g 3:42.

Multiple iterations of the Board have attempted to amend the Original Covenants to cure some of those problems without success due in part to consistently low levels of participation and voter turnout from the townhouse owners.  *See* Hr'g Rec'g 3:40–:52.  The Original Covenants require that amendments be approved by 66 2/3% of the membership; however, voting rights may be suspended for owners who are delinquent in payment of association dues and assessments. [ECF Doc. 351, Ex. 1, §§ 12.01 and 3.04(d)]; Hr'g Rec'g 3:26–:28.  In the five years that Cousins has served on the board, he has never attended a meeting where owner turnout was greater than 50%. *See* Hr'g Rec'g 3:51.

**The Plan and Proposed Amended Covenants**

Port Louis filed a voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code on December 26, 2024.  [ECF Doc. 1].  At a meeting of Port Louis HOA members in August 2025, the officers of Port Louis HOA, in coordination with counsel and the Subchapter V Trustee, announced their intention to amend the Original Covenants to give Port Louis HOA the opportunity to make the association financially viable and to meet the needs of the association and its members.  *See* Hr'g Rec'g 3:19–:20.  They asked for input from all townhouse owners and received comments and suggestions from some, incorporating those comments into proposed Amended Covenants.  *See* Hr'g Rec'g 3:19–:20 & 3:57.  On October 29, 2025, Port Louis HOA mailed notice packets to all townhouse owners, each including a cover letter, a ballot, and a copy of the Amended Covenants. [ECF Doc. 351, Ex. 3]; Hr'g Rec'g 3:20–:21.  The cover letter instructed owners that ballots voting for or against the adoption of the Amended Covenants must be signed by all legal owners of each unit and returned on or before November 15, 2025.  [ECF Doc. 351, Ex. 3]; Hr'g Rec'g 3:21–:23.

Despite the provision in the Original Covenants that curtailed voting rights for townhouse owners who are delinquent in payment association dues and assessments, the Port Louis HOA board opened the vote on adoption of the Amended Covenants to all townhouse owners in the interest of fairness.  *See* Hr'g Rec'g 3:25–:29.  Concerned with historically low participation and voter turnout, the board also changed the approval requirement to a 51% majority of votes cast.  *See id*.  Of the 53 ballots that the Port Louis HOA board mailed to each unit's owners, 18 valid

ballots were returned.[3]  Twelve of the votes cast were cast in favor of approving the Amended

Covenants and 6 votes were case against approval.  [ECF Doc. 351, Ex. 6]; Hr'g Rec'g 3:23–:24.[4]

Pertinent provisions of the Amended Covenants include:

(i)     The board will have the authority to pursue injunctive relief or damages from homeowners for violations of the Amended Covenants, Bylaws, and rules and regulations promulgated by the board;

(ii)    Owners will be responsible for both interior and exterior maintenance of their properties; and

(iii)   Owners will be required to maintain individual insurance policies covering their properties.

[ECF Doc. 351, Ex. 3, §§ VI(g), IX(1), and X(2)(a)].

The Plan contemplates that, with approval of the Amended Covenants, which transfers the responsibility and costs of insuring townhouses to owners, Port Louis HOA will fund Plan payments and ongoing operations through the collection of association dues.  [ECF Doc. 352, Art 1].  The only payments required under the Plan are roughly $50,500 in administrative expenses and $3,000 to Class 1, which consists of the unsecured claim of Steve Conley, Esq.  [ECF Doc. 352, Arts. 3 & 4].  Any distribution to Classes 2 and 3, comprised of holders of prepetition tort and property damage claims, is limited to insurance proceeds, and the claims for property damage in Class 4 are subject to setoff in an amount greater than the claims.  [ECF Doc. 352, Art. 4].

### CONCLUSIONS OF LAW

Section 1191 of the Bankruptcy Code governs confirmation of a plan in a Subchapter V case.  A plan may be confirmed consensually under § 1191(a) if all elements of § 1129(a), other

---

[3]     Seven additional ballots were returned after the November 15 voting deadline or filled out incorrectly or ambiguously and thus were not included in the tabulation.

[4]     Of the owners who were current in their assessments at the time of the vote—and thus entitled to vote under the Original Covenants—10 voted in favor of the amendments and 3 voted against.  *See* Hr'g Rec'g 3:29.

than paragraph (15), are satisfied. As stated above, the Court finds that Port Louis HOA has met its burden to show that each applicable § 1129(a) factor is satisfied and the Court specifically finds that, with the approval of the Covenants Approval Motion, the plan is feasible under § 1129(a)(11).

Section 1129(a)(11) requires the Court to find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). "All the bankruptcy court must find is that the plan offer 'a reasonable probability of success.'" *Matter of T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997) (quoting *In re Landing Assoc., Ltd.*, 157 B.R. 791, 820 (Bankr. W.D. Tex. 1993)).

Cousins and Durst, both of whom are intimately familiar with the operations of the Debtor, testified that rising costs of insurance coupled with a persistent shortfall in the collection of association dues were the causes of Port Louis' financial difficulties and bankruptcy filing. *See* Hr'g Rec'g 3:15–:18, 3:46–:55. The evidence also revealed that these problems were exacerbated by certain provisions in the Original Covenants. Port Louis has been required by its governing documents to carry a master insurance policy that is both prohibitively expensive and inadvisable for the type of association that Port Louis is. *See* Hr'g Rec'g 3:15–:18. Moreover, the lack of clarity in the Original Covenants regarding the contours of the board's responsibility for exterior maintenance and the lack of tools for enforcing rules and regulations impeded the board's ability to collect from the large number of homeowners who were going many months or even years without paying assessments. *See* Hr'g Rec'g 3:42–:51.

The Amended Covenants respond to these issues by shifting responsibility for insurance and exterior maintenance from Port Louis to the homeowners and improving the board's enforcement mechanisms. *See* [ECF Doc. 351, Ex. 2]; Hr'g Rec'g 3:15–:17, 3:48–:51. Pursuant

to 11 U.S.C. §§ 105(a) and 1123(a)(5), the Court finds that it was fair and equitable for the Debtor to adjust the voting requirements for passing amendments under the Original Covenants.

Other courts have recognized that the approval of amended covenants can be an essential component of proposing a feasible plan of reorganization. *See Harper v. Heather Hills Amenities, LLC (In re Heather Hills Amenities, LLC)*, 637 B.R. 168, 172 (M.D. Fla. 2022) (approving amendments to HOA debtor's covenants where the amendments were "integral to the success of the Debtor's reorganization."). Here, the changes made in the Amended Covenants provide the reasonable probability of success required by § 1129(a)(11) by remediating the problems that precipitated the bankruptcy filing.

11 U.S.C. § 1123(a) provides that "notwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . (5) provide adequate means for the plan's implementation." This provision allows a reorganization plan to preempt contrary state law. *See, e.g. In re Federal-Mogul Global*, 684 F.3d 355, 374 (3d Cir. 2012) (holding that a plan could provide for the transfer of a debtor's insurance policies notwithstanding anti-assignment provisions, where such transfer facilitated the debtor's "fresh start" and furthered the intentions of Congress in passing 11 U.S.C. § 524(g)). Approval of the Amended Covenants as a component part of the Plan facilitates the important "fresh start" purpose of bankruptcy by enabling Port Louis HOA to operate as a going concern.

Moreover, Port Louis HOA took appropriate steps to ensure that the process of voting on the Amended Covenants was fair to all homeowners. The board gave homeowners advanced notice that the vote would be held, invited them to make suggestions regarding the proposed amendments, and allowed *all* homeowners to vote, even those who were delinquent in paying assessments. *See* Hr'g Rec'g 3:19–:29. Pursuant to 11 U.S.C. §§ 105(a) and 1123(a)(5), the Court

finds that the manner in which Port Louis HOA adjusted the voting requirements for an amendment under the Original Covenants was fair and equitable.

Accordingly,

**IT IS ORDERED** that the Covenant Approval Motion is **GRANTED.**

**IT IS FURTHER ORDERED** that the Plan is **CONFIRMED** under 11 U.S.C. § 1191(a). The Court will enter a separate Order containing factual findings for all § 1191(a) requirements.

**IT IS FURTHER ORDERED** that counsel for Port Louis HOA shall serve this Order via first-class U.S. Mail on the required parties who will not receive a copy through the Court's CM/ECF system pursuant to the Federal Rules of Bankruptcy Procedure and this Court's Local Rules and file a certificate of service to that effect within three (3) days.

New Orleans, Louisiana, May 20, 2026.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE